**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Robert Workman,**
**Claimant Below, Petitioner**

**v.)** **No. 24-231** (JCN: 2021025682)
(ICA No. 23-ICA-461)

**Raleigh County Solid Waste Authority,**
**Employer Below, Respondent**

# MEMORANDUM DECISION

Petitioner Robert Workman appeals the February 27, 2024, memorandum decision of the Intermediate Court of Appeals of West Virginia ("ICA"). Respondent Raleigh County Solid Waste Authority filed a timely response.[1] The issue on appeal is whether the ICA erred in affirming the October 3, 2023, decision of the West Virginia Workers' Compensation Board of Review, which affirmed the claim administrator's order granting Mr. Workman a 6% permanent partial disability award. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the Board of Review's decision is appropriate. *See* W. Va. R. App. P. 21.

On June 23, 2021, Mr. Workman sustained an occupational injury when, as he was trying to remove a plastic bag from his work truck, slipped and fell several feet, and was knocked unconscious. By order dated August 6, 2021, the claim administrator held the claim compensable for a concussion, an abrasion of the scalp, and a contusion of the right shoulder. The record indicates that Mr. Workman has a history of concussions, falls, and problems with vertigo/equilibrium pre-dating the compensable injury.[2]

---

[1] The petitioner is represented by counsel Reginald D. Henry and Lori J. Withrow, and the respondent is represented by counsel Steven K. Wellman and James W. Heslep.

[2] Medical records suggest that Mr. Workman has sustained as many as fifteen concussions due to various accidents, vehicle wrecks, falls, and boxing. Additionally, medical records indicated that Mr. Workman has been suffering from a five-year history of cognitive change, and there was concern that he had Creutzfeldt-Jakob disease, a degenerative brain disorder that leads to dementia. As recent as February of 2021, Mr. Workman sought treatment for injuries sustained during a fall, and it was noted that he had suffered multiple falls that were mainly due to bending over and losing his balance.

Mr. Workman was evaluated by four physicians in order to determine his impairment related to his compensable injury. On April 28, 2022, Prasadarao Mukkamala, M.D., using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("AMA *Guides*"), recommended 5% whole person impairment for vertigo remaining from the concussion; 0% for the abrasion of the scalp; and 1% for the contusion of the shoulder. In total, Dr. Mukkamala found 6% whole person impairment. Based upon Dr. Mukkamala's recommendation, the claim administrator granted Mr. Workman a 6% permanent partial disability award on June 6, 2022. Mr. Workman protested the claims administrator's order.

In support of his protest, Mr. Workman underwent an independent medical evaluation with Bruce Guberman, M.D., on October 20, 2022. Using the AMA *Guides*, Dr. Guberman found 9% impairment for dizziness and disequilibrium, as he opined that Mr. Workman had limitations in activities of daily living with non-hazardous activities. Dr. Guberman also found 5% impairment for the right shoulder contusion for reduced range of motion. However, Dr. Guberman did not apportion for either equilibrium or the shoulder contusion injury and, his final recommendation was 14% whole person impairment, which represented an additional 8% award.

Subsequently, on December 16, 2022, Michael Kominsky, D.C., performed an independent medical evaluation of Mr. Workman and provided an impairment rating that was identical to Dr. Guberman's rating. Dr. Kominsky diagnosed a myriad of conditions including concussion with loss of consciousness, scalp abrasion, encephalopathy, equilibrium dysfunction, right shoulder contusion, head injury, vertigo, dizziness, and memory loss. Dr. Kominsky found 5% whole person impairment in the right shoulder for reduced range of motion, and he found 9% whole person impairment for disequilibrium, for a total of 14% whole person impairment as a result of the compensable injury.

Most recently, Mr. Workman was evaluated by Syam Stoll, M.D., on February 9, 2023. Using the AMA *Guides*, Dr. Stoll assessed 9% whole person impairment; however, Dr. Stoll apportioned the entire 9% to Mr. Workman's extensive prior history of concussions, head injuries, cognitive issues, and falls. Regarding the right shoulder contusion, Dr. Stoll assessed 7% whole person impairment. Dr. Stoll opined that such a rating was significant and not consistent with a contusion injury. Dr. Stoll stated that, rather, the impairment was likely due to the natural progression of Mr. Workman's prior injuries. As such, Dr. Stoll apportioned 4% and attributed 3% to the compensable injury. In all, Dr. Stoll's final recommendation was 3% whole person impairment.

By order dated October 3, 2023, the Board of Review affirmed the claim administrator's order granting Mr. Workman a 6% permanent partial disability award in accordance with Dr. Mukkamala's recommendation. It was determined that the medical records established a reasonable basis to apportion some of Mr. Workman's concussion-related symptoms to his prior head injuries. The Board of Review noted that Mr. Workman had a history of prior concussions, traumatic brain injuries, multiple falls due to losing his balance, and vertigo. Because neither Dr. Guberman nor Dr. Kominsky apportioned any of the impairment for Mr. Workman's concussion-related symptoms, the Board of Review found their reports to be unreliable. The Board of Review also noted that Dr. Mukkamala "attributed 5% impairment to [Mr. Workman's] compensable head

injury while Dr. Stoll apportioned all of the 9% impairment" and, ultimately, affirmed the claim administrator's order granting Mr. Workman a 6% PPD award in accordance with Dr. Mukkamala's recommendation.

In a memorandum decision dated February 27, 2024, the ICA affirmed the Board of Review's decision to award Mr. Workman 6% PPD. *See Workman v. Raleigh County Solid Waste Authority*, No. 23-ICA-461, 2024 WL 1590461 (W. Va. Ct. App. Feb. 27, 2024) (memorandum decision). The ICA found that Mr. Workman failed to demonstrate that the Board of Review's findings and conclusions were clearly wrong and stated:

> There is significant, overwhelming evidence of Mr. Workman's prior concussions, vertigo issues, falls, and cognitive decline prior to the compensable injury which, contrary to his claims, affected his activities of daily living. The Board was not clearly wrong in determining that, under the circumstances, the impairment ratings of Drs. Guberman and Kominsky were too high and did not accurately reflect impairment attributable to the compensable injury. Rather, Dr. Mukkamala's 6% WPI rating more closely resembled the true impairment arising from the compensable injury. Given these circumstances, we cannot find clear error in the Board's findings.

*Id*. at *3.

This Court reviews questions of law de novo, while we accord deference to the Board of Review's findings of fact unless the findings are clearly wrong. *See* Syl. Pt. 3, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024). West Virginia Code § 23-4-9b provides that, unless there is a permanent total disability, a preexisting disease or injury "shall not be taken into consideration in fixing the amount of compensation allowed by reason of the subsequent injury." In Syllabus Point 6 of *Duff*, we held that

> [u]nder West Virginia Code § 23-4-9b (2003), the employer has the burden of proving apportionment is warranted in a workers' compensation case. This requires the employer to prove the claimant "has a definitely ascertainable impairment resulting from" a preexisting condition(s). This requires that employer prove that the preexisting condition(s) contributed to the claimant's overall impairment after the compensable injury and prove the degree of impairment attributable to the claimant's preexisting condition(s).

250 W. Va. at 512, 905 S.E.2d at 530.

On appeal, Mr. Workman argues that the Board of Review was clearly wrong in finding that he did not prove by a preponderance of evidence that he sustained more than 6% whole person impairment. Although Mr. Workman admits to a history of concussions, he contends that he developed dizziness and additional daily living limitations as a result of his injury. As such, Mr. Workman maintains that the Board of Review erred in dismissing the opinions of Dr. Guberman and Dr. Kominsky, who both determined that apportionment was not necessary for Mr.

3

Workman's concussion-related symptoms. Raleigh County Solid Waste Authority counters by arguing that the employer proved that a significant preexisting condition exists in this case and that the evaluator of record agreed that there was a least a minimal amount of impairment due to equilibrium issues prior to the compensable injury. As such, Mr. Workman failed to demonstrate any reversible error by the ICA.

After review, we find that the employer successfully showed that apportionment was proper in this case for several reasons. First, Mr. Workman has a history of multiple head injuries pre-dating the compensable injury resulting in dizziness and issues with disequilibrium. Second, Dr. Mukkamala considered the preexisting conditions and attributed 5% impairment to Mr. Workman's compensable concussion-related complaints. Third, it must be noted that Dr. Stoll apportioned all of the 9% impairment that he found to the natural progression of Mr. Workman's noncompensable preexisting disease. In all, the record shows that Mr. Workman's preexisting conditions contributed to his overall impairment after the compensable injury. The Board of Review, the trier of fact, determined that the reports of Drs. Guberman and Kominsky were not reliable for establishing impairment because each physician failed to apportion any of Mr. Workman's impairment resulting from his concussion-related symptoms prior to his compensable injury. In contrast, Dr. Mukkamala's 6% whole person impairment, as noted by the ICA, closely resembles the true impairment arising from the compensable injury. The standards of *Duff* have been satisfied in this case.

Therefore, we find that the Board of Review's decision was not clearly wrong, nor was the ICA in adopting the Board of Review's opinion. The Board of Review is the trier of fact, and it served that function appropriately. Accordingly, we affirm the ICA's memorandum decision dated February 27, 2024.

Affirmed.

**ISSUED: January 14, 2025**

**CONCURRED IN BY:**

Chief Justice William R. Wooton
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV

4